All right. Our fifth case for this morning is United States v. Charles Petrunak. Ms. Robinson. May it please the Court. Good morning, Your Honors. I'm Kimberly Robinson on behalf of Charles Petrunak. The District Court committed two errors in this case, and I will first start with the sentencing error. Mr. Petrunak was convicted of making and subscribing false and fraudulent IRS forms to the IRS. In determining the tax loss, the District Court had two options in applying the United States sentencing guidelines. The first option which the District Court had in determining the loss, which I will refer to as option A, is the option which this Court held in United States v. Black is the most appropriate option to use in determining a tax loss. And that case held that the District Court, in looking at the guidelines, should determine what the revenue was that was owed to the IRS, but that was not received due to the defendant's criminal conduct. But, of course, that's exactly what 2T1.1C1 gets at. If the offense is improperly claiming a deduction, then you figure out the amount of the deduction, and then you look at 28 percent, which is the bracket, I suppose, that's assumed to be applicable, although there was a less favorable bracket that they might have used for Mr. Petrunak, but the Court didn't. And that is the tax loss. It's not the whole amount of the deduction. And the application notes make that even more clear. There was no better data about the tax loss than looking at this. His improperly claimed deductions were $500,000, 250 apiece. 28 percent of the 5 is 140, and that's the revenue the government didn't get because of his activity. Thank you, Your Honor. Mr. Petrunak would assert that there was a better way to calculate the tax loss. In this case, it would be the formula that was applied in Black and supported this argument. But Black was different. Black was this guy who owed some money, and he kept writing bad checks to pay it. And what the mistake the district court made there was just to add up all the bad checks as though each time the entire tax loss was being counted against him again. And we said, no, you know, that's not the right way to count it. You've got to dig back and find out what was the tax loss. But I really don't see how the Black rule helps you. If I may explain, Your Honor, this is how Mr. Petrunak believes the Black rule helps him. First of all, in this case, it was the government's position that the IRS was its primary victim. With that information, the government had in its power to ascertain the things that would be used to determine the revenue that was owed to the IRS. For example, the government could certainly have obtained information from the IRS regarding Mr. Petrunak's income, which that information is in the record. It was stated in the pre-sentence report. So first of all, you could ascertain Mr. Petrunak's income. But the problem with Mr. Petrunak is he's not really a reliable reporter. And what we do know is that he does take these two deductions. And we also know, and the judge points this out, that he does it in a way that will actually give him a net operating carryover tax loss. He counts this big tax loss a little bit, which might have been legitimate, and the 500, which wasn't. So this was a situation where it was actually uniquely difficult to know what the final dollar amount would be. And that's what the guidelines say. Well, in that case, you can just do this across the board, 28% of the improper deductions. I don't know how you can get Mr. Petrunak divorced from the improper deductions. He could actually have carried that loss for 20 years until he exhausted it. So we could never know, you know, the government could never know what his tax income or tax liability might be for those future years. Thank you. I can tell you, I lucked out. Your Honor, that's exactly our point here. The fact that Mr. Petrunak could have, the operative word is could have, which is very speculative, carried that purported loss over for the next 20 years, in Mr. Petrunak's opinion, is more speculative than actually using the formula that requires the court to, or the government to prove the amount of revenue that was owed to the IRS. In this case, it would have been very, it would not have been as difficult to ascertain the revenue that was owed to the IRS. I don't see that at all if the deductions are in place. And it seems inconsistent with the commentary note, which says that there are certain situations in income tax cases in which the tax loss may not be reasonably ascertainable. In these situations, it takes you right back to that presumptive 28% of the deduction. There are a few other provisions that are comparable, but we're dealing with the deduction one. I just don't see how he comes off any better unless you ignore his improper deductions. And there's no reason for us to do that. That's the essence of this case. Your Honor, we're certainly not suggesting that this court ignore the deductions that the government claimed were improper. But what we are suggesting. So how do they factor into the loss in your view? Well, I think with the formula that Mr. Petrunak is offering, the deductions don't matter as much in terms of determining the tax loss because it's an alternative formula. The black case, I mean the guidelines say that you use the 28% of the claim deductions when you don't have a more accurate way to determine the tax loss. And that's exactly our point here, Your Honor, is that we do have a more accurate way to determine the tax loss. If I may get back to my point. All right. Go ahead. Thank you. In addition to having the income, which it's clear in the record, the government had Mr. Petrunak's income. The government also had information with regard to Mr. Petrunak's claim deductions, whether they were improper or proper. And you take his income versus the deductions and you arrive at an amount where you have a tax loss. And that's what we're urging this court to adopt that formula in this case because there is a clear way to ascertain the tax loss without using the 28% formula. And, again, in support of this argument against the formula, we would invite the court to consider this in a case where a person might illegally claim a million dollars in deductions. And would it be fair to allow the government to then come in and say, after the claim of a million dollars, that 28% of a million dollars is the tax loss in this case? Or do we determine some other formula that's better at determining what the tax loss should be, which would be more fair to the defendant? I see that I'm getting into my rebuttal time. Okay. You can save your rebuttal time. Thank you. Mr. Reitz. May it please the Court. Brian Reitz for the government. This case is basically the reason the 2T1.1c presumption exists. There's really no way to ascertain what the tax loss would have been. I would like to address the point that the government had somehow better information. I mean, the government had no superior information in this case than the defendant would have. This was defendant's income and his tax filings. And the commentary allows either party to put forth better information, but there is no better information than the 28% presumption applies. So is the essence of the government's position the fact that once he files his tax returns claiming these losses, planning perhaps to use them as, you know, in the carry-forward sense for the next 20 years, he's made enough of an effort to defraud the IRS that all of this comes into play? Yes. So the million-dollar hypothetical that Ms. Robinson just gave would be the same if he was really planning on trying to use that million dollars as losses for the next 20 years? Yes. The answer to that hypothetical would be 28% of that $1 million would be the tax loss under the sentencing guidelines, both the commentary notes and- You argue that a more accurate determination isn't possible, you know, because he could carry the loss over for 20 years. But how much of the loss was reflected in his tax calculations for the tax year 2008 when he claimed that 500 plus business loss? Did that reflect all of the 500,000 deduction at issue here? And how much was supposed to carry over to future years? You know, I think his tax filing income was only like $2,500, so he would have used that amount, subtracted that from the $500,000, and the $500,000 would have applied going forward for the next 19 years or however long until he exhausted that amount, which I think leads right back into the point that it's unassertainable what the tax loss would have been, and that's why we use the presumption. But he must have had some other losses because, as I understand, in the 2008 return, he reports a loss of $543,191. So maybe he has other losses? The $43,000 was another 1099 that he filed against a third-party insurer, so we think that's fraudulent, too. We narrowed the issues and just used the $500,000 to the two agents. But so there was actually more fraudulent 1099s, and that's discussed in the sentencing hearing as relevant conduct. I think there was another one for like $800,000 against someone else, but it never showed up on his taxes. He sent 1099s without deducting it. So while there was the $543,000, only the $500,000, I suppose, he was found guilty of. Only that benefits him other than the rest of it harasses these other people. Yes. So that's really, I think, the main reason why we narrowed that trial because there was actual—I mean, of course, the IRS was a victim as well, but there were actual faces to put the harassment to. But either way, we're at the point where there's no more easily ascertainable number, so we apply the presumption. And if there are no further questions, the government would be happy to rest on this briefing. This court should affirm. Judge Rovner? Okay. Thank you. Thank you. All right. Thank you. Ms. Robinson, you can wrap up. Thank you, Your Honor. If I might respond to Your Honor's question about how much of the losses would have carried over for the next 20 years, I think the government's— well, I think that question leads to a more speculative answer  that was owed to the IRS versus what was not received. We're speculating more about 20 years down the road than we would if we were to take his income. The government's counsel indicated that Mr. Petrunak's income during the tax year 2008 was somewhere around $2,500. But the thing is you can't, in a year that you have losses that exceed your income, you can't just ask the government to write you a check for all of that. You can use the losses in the carryover format. So they're not valueless. They have a future value which will only come about as you earn more income, offset the next year, more income, offset the next year. So looking at just his 2008 income treats these deductions as if they didn't exist actually. I mean, you have to take into account that future flow of their value. I don't dispute that point, Your Honor, on behalf of Mr. Petrunak. But what we would suggest to the court is that it's just simply a more speculative argument or road to take rather than to determine the tax loss, which could have been determined in this case. And government's counsel indicates that Mr. Petrunak had every opportunity to provide information to the court regarding the intended loss. But we submit that it was the government's burden. It was the government's burden to prove these charges. Therefore, it was the government's burden to at least make a showing of what the loss would have been had the IRS received the revenue. Thank you. I see I'm out of time. All right. Thank you very much, and thank you for accepting the appointment from the court. We appreciate your efforts. Those on behalf of your client.